JOURNAL ENTRY AND OPINION
Plaintiff-appellant Venisha Butler, Administrator of the Estate of Aaron Butler, deceased minor child, appeals from the trial court's order granting the Civ.R. 12(B)(6) motion to dismiss filed by defendant-appellee Cuyahoga County Department of Human Services (CCDHS). Final judgment has not been rendered, but the trial court found that there was no just reason for delay.
On January 22, 1997, the appellant filed a complaint naming as defendants Geraldine Jordan, Guardian Angel Day Care do Geraldine Jordan (Guardian Angel), and CCDHS. The complaint alleges that Venisha Butler is the mother and legal guardian of Aaron Butler, deceased. Jordan was the operator of and primary care giver at Guardian Angel, a day care home licensed by CCDHS.
The complaint alleges that on April 6, 1995, eight month old Aaron Butler was left in the care of Jordan at the Guardian Angel. At approximately 3:15 p.m., when Ms. Butler returned, Aaron was not breathing and was cold to the touch. A sticky residue was found on the infant's face, near his nose and mouth. Aaron was pronounced dead on arrival at University Hospital's Rainbow Babies and Children's Hospital. Jordan's negligence and/or recklessness includes, but is not limited to, placing tape over the mouth of Aaron Butler, falling asleep while on duty, failing to keep commercially prepared formula available in the home, failing to have health records available, and allowing Aaron to sleep in a car seat. These actions were the direct and proximate cause of the death of Aaron Butler. Count two of the complaint alleges negligence and/or recklessness on the part of Guardian Angel as the direct and proximate cause of Aaron's death.
In count three of the complaint, the appellant asserts that CCDHS was the responsible licensing party for Guardian Angel. CCDHS was negligent and/or reckless in licensing and certifying Guardian Angel to provide day care services to infants. CCDHS's negligence and/or reckless certification and licensing of Guardian Angel was the direct and proximate cause of the wrongful death of Aaron Butler.
On May 16, 1997, CCDHS filed its Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted. The motion asserted that CCDHS is immune from suit pursuant to R.C. 2744.02, on the basis of sovereign immunity. The appellant filed her brief in opposition, but requested that the court convert the motion to dismiss into a motion for summary judgment. The trial court did not convert the motion, but instead the trial court granted the motion to dismiss. The court additionally found no just reason for delay. This appeal timely followed.
The appellant sets forth three assignments of error. The second assignment of error is dispositive and will be considered first.
The appellant's second assignment of error:
 THE TRIAL COURT'S ENTRY OF DISMISSAL WAS IMPROPER, AS APPELLEE HAS NO IMMUNITY FOR ITS NEGLIGENT PERFORMANCE OF A PROPRIETARY FUNCTION AND FOR ITS VIOLATION STATUTORILY MANDATED CONDUCT.
The appellant asserts that the licensing and certification of a day-care home is a proprietary function and that pursuant to R.C.2744.02(B)(2) the appellee is not immune from its negligent performance. The appellant posits that certification of a day-care home is performed in satisfaction of a statutory and governmentally imposed duty, is not done as part of the operation of a human services department and the certification process is proprietary in that it promotes or preserves the public peace, health, safety, or welfare and involves activities that are customarily engaged in by non-governmental persons. R.C. 2744.01
(G)(1)(b).
Next, the appellant asserts that CCDHS may be held liable because liability is expressly imposed under the Ohio Revised Code. R.C. 5104.11 requires CCDHS to inspect a family day-care home upon the request for certification. The statute requires specific training and credentials for the operator and staff. The appellant asserts that Jordan and Guardian Angel did not meet these standards and that CCDHS failed to take any action despite its awareness that Jordan was not properly trained. Additionally, the appellant states that there were more than the permitted number of children present in the home at the time her child died and the appellee further failed to conduct the required background check. R.C. 5104.12(A)(1)
A complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. York v. Ohio State HighwayPatrol (1991), 60 Ohio St.3d 143, citing to O'Brien v. UniversityCommunity Tenants Union (1975), 42 Ohio St.2d 242. The deference to be shown the allegations in the complaint was set forth as follows in Fahnbulleh v. Strahan (1995), 73 Ohio St.3d 666, 667:
 A complaint should not be dismissed for failure to state a claim merely because the allegations do not support the legal theory on which the plaintiff relies. Instead, a trial court must examine the complaint to determine if the allegations provide for relief on any possible theory. See Patriarca v. Fed. Bur. of Investigation (D.R.I. 1986), 639 F. Supp. 1193. A court must construe all material allegations in the complaint and all inferences that may be reasonably drawn therefrom in favor of the nonmoving party. Phung v. Waste Mgt., Inc. (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 114. Thus, a court must presume all factual allegations in the complaint are true for purposes of the motion. Bridges v. Natl. Eng. Contracting Co. (1990), 49 Ohio St.3d 108, 551 N.E.2d 163.
In resolving a motion to dismiss, courts are confined to saverments set forth in the complaint and cannot consider outside evidentiary material unless the motion is converted, with appropriate notice, into one for summary judgment. State ex rel.The V Cos. v. Marshall (1998), 81 Ohio St.3d 467; Thompson v.Cent. Ohio Cellular, Inc. (1994), 93 Ohio App.3d 530, 538. While immunity is an affirmative defense, where the complaint itself bears conclusive evidence that the action is barred by the defense, a Civ.R. 12(B)(6) dismissal is proper. Rich v. ErieCty. Dept. of Human Resources (1995), 106 Ohio App.3d 88.
Political subdivisions are shielded from civil liability as provided by R.C. 2744.[1] The policies underlying this chapter support this interpretation. Wilson v. Stark Cty. Dept. of HumanServ. (1994), 70 Ohio St.2d 450, 451. R.C. Wilson holds that Chapter 2744 was the General assembly's response to the judicial abrogation of common-law sovereign immunity. Wilson, supra, at 453, citing to Franks v. Lopez (1994), 69 Ohio St.3d 345. The manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions. Id. R.C.2744.01(F) includes a county amongst those entities defined as a political subdivision. The Ohio Supreme Court has affirmatively determined that immunity from civil liability conferred upon a county by R.C. 2744 extends to the county's human services department. Wilson, supra.
R.C. 2744 sets forth a tiered analysis for determining whether a political subdivision is immune from liability. Cater v.Cleveland (1998), 83 Ohio St.3d 24, 28. First, the general rule of immunity is set forth in R.C. 2744.02(A). This immunity is not absolute and is subject to the five exceptions in R.C.2744.02(B). Thus, once immunity is established, the second tier of analysis is whether any of the five exceptions in R.C. 2744.02
(B)(1) — (5) apply. Id. Where the legislature has granted a specific immunity under the subdivisions listed in R.C. 2744.01
(C), this court must still analyze whether or not one of the exceptions to immunity listed in R.C. 2744.02(B) apply. Cater,supra.
The broad immunity conferred on political subdivisions in R.C.2744.02(A)(1) separates the functions of the political subdivisions into two categories, governmental and proprietary:
 (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
As noted above, R.C. 2744.02(B) provides exception to the immunity created in R.C. 2744.02(A)(1) for political subdivisions. One of the exceptions, R.C. 2744.02(B)(2), provides that political subdivisions are liable for injury, death or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivision. There is no such general exception for governmental functions. Wilson, supra at 452.
The exception to sovereign immunity at issue here is found in R.C. 2744.02(B)(5) which provides liability where such has been expressly imposed by another statute:
 (B)(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued. (Emphasis added.)[2]
In order to determine whether licensing of a type B day-care home is a governmental or a proprietary function; we next examine the definitions as given in R.C. 2744.01(C) and (G)
 (C)(1) "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
 (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
 (b) A function that is for the common good of all citizens of the state;
 (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.
R.C. 2744.01(C)(2) sets forth various instances of powers, services and activities which constitute governmental functions. R.C. 2744.01(C)(2) (in) specifically states:
 (C)(2) (in) The operation of a human services department or agency, including, but not limited to, the provision of assistance to aged and infirm persons and to persons who are indigent;
See Wilson, supra, at 452, where the Supreme Court notes that the definition of a. governmental function expressly includes the operation of a human services department.
R.C. 2744.01(G)(1) defines proprietary function as:
 (G)(1) "Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:
 (a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;
 (b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.
Turning to the appellant's first argument, that the licensing of a type B day-care home is a proprietary function, this court must disagree. While it is true that R.C. 5104.11 provides that the licensing of a type B day-care home may be done by a county human services department, or that the director of human services may contract with a government entity or a private nonprofit entity for the inspection and licensing, this section in and of itself is not sufficient to place the licensing procedure in the category of proprietary function rather than governmental function.
The definition of proprietary function in R.C. 2744.01(G)(1) states that a proprietary function may not be one specifically enumerated as a governmental function in R.C. 2744.01(C)(2). As set forth above, R.C. 2744.01(C)(2) (in) states that the operation of human services is a governmental function. Wilson,supra. This specific subsection makes it unnecessary to analyze the terms "governmental' function and "proprietary' function under the general definitions contained in R.C. 2744.01(C)(1) and (G)(1), respectively. Thus, a plain reading of the statutes shows that the legislative intent was for the operation of a human services department to be considered a governmental function and sovereign immunity would attach.
The appellant next asserts that the licensing of a type B daycare home is not part of the "operation" of a human services department. The appellant defines "operation" as administrative functions inherent in allocation governmental funds and services. This definition is too narrow. See Black's Law Dictionary (5 Ed.Rev. 1979) 984 where operation is defined as "Exertion of power; the process of operating or mode of action; an effect brought about in accordance with a definite plan; action; activity." Licensing could be considered an exertion of power or part of a process integral to human services. Since the legislature has required human services departments to be responsible for either licensing or contracting with another agency for licensing, it appears that licensing is part of the operation of a human services department. R.C. 5104.11.
The appellant next argues that, as set forth supra, CCDHS, may be held liable under R.C. 2744.02(B)(5). This court has held that where there is a mandatory duty, liability follows. GlobeAm. Cas. Co. v. Cleveland (1994), 99 Ohio App.3d 674. R.C.5104.11 imposes a mandatory duty on CCDHS to inspect and license type B day-care homes. This court must take all allegations in the motion to dismiss as true and must read the motion in the light most favorable to the non-moving party. York, supra. Given this standard of review for a motion to dismiss, and applyingGlobe, supra, as this court is bound to do,[3] an express duty has been imposed on the appellee which constitutes an exception under R.C. 2744.02(B)(5) to the sovereign immunity granted to human services under R.C. 2744.01(C)(2) (in).
The appellant's second assignment of error is well taken.
The appellant's first and third assignments of error are moot under App.R. 12.
Judgment reversed and remanded.
This cause is reversed and remanded.
It is, therefore, considered that said appellant(s) recover of said appellee(s) her costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
TERRENCE O'DONNELL. P.J. DISSENTS;
LEO M. SPELLACY, J., CONCURS WITH
ATTACHED CONCURRING OPINION.
 ______________________________ JAMES D. SWEENEY JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(E), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Note that this court is using the versions of R.C. 2744.01
and R.C. 2744.02 which were in effect on January 2, 1997, the date the case was filed. VanFossen v. Babcock Wilcox Co.
(1988), 36 Ohio St.3d 100.
[2]This language has been changed. R.C. 2744.02(B)(5) now states: "(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility ormandatory duty upon a political subdivision, because of a generalauthorization in that section that a political subdivision maysue and be sued, or because that section uses the term "shall" ina provision pertaining to a political subdivision." (Emphasis added.)
[3]S.Ct.R.Rep.op. 2 (G)(2)